What are we doing here? That is a question that I'm sure we need to address initially, and I think that it's a question that can be answered in two important respects. First, is this moot? Ms. Newton has been released. She was released in June of 2024. However, she's still on supervised release, and she's still subject to the restitution order, which is the calculation of which will be disputed on remand. When does she come off a supervised release? Two months? My understanding is that it is in approximately two months. So, if the opinion isn't issued within two months, do you agree that all of the sentencing issues except for restitution are moot? The loss calculation doesn't matter at that point. I believe that the loss calculation could matter, simply because the parties agree that it needs to be remanded anyways. I know we've got to talk about that, because we've got to talk about So, if the court finds that the only issue warranting remand as far as the loss amount goes is the error in the two-point calculation, then my understanding is that she's still subject to resentencing. In this case, Ms. Newton feels very strongly that even if it's a case where a court would make a finding that she's over-served, that's an important finding for her. Well, a lot of people would like an advisory opinion, but that doesn't mean that they'll get one. I would like to know why you began by asking why we are here. I would really like to know why you are here. That is, does your client really want a remand on the restitution order? The term of the restitution order strikes me as quite favorable to your client, and if it's a legal error and the district court imposes restitution based on loss, I can't see it going in any direction except up. That's an extremely astute point, and in question, it is something that we've had long discussions with the client about and advised her on this. The issue simply is that she doesn't believe that they can make their finding necessary under restitution to find a client. Yeah, she feels very strongly that... But she understands that this may be much the worse for her. Yes, both in the restitution and if she gets another judge, that judge may give a sentence that's higher, and this judge may give a sentence that's higher. She understands that it's entirely possible not only that the restitution will be higher, but that she might have to go back into custody. She's been advised on that. She feels very strongly about it. Under the totality of the circumstances test, why would we remand... Let's say the judge... Let's assume the loss amount is $1.2 million, and the guideline is a 14-level enhancement, not a 16-level enhancement. She's already served her sentence, so that doesn't matter. She got one-year supervised release, which she comes off of in two months. But under the error... In terms of why could we not... We can determine from the transcript and the probation officer's recommendation exactly why she got one year of supervised release. It had to do with the deportation consequences of her conviction. It had nothing whatsoever to do with the amount of loss determined by the district court. By the way, the district court was very clear on amount of loss of $1.2 million, I think at least. You put this in your brief. The district court talked about the amount of loss, but there's no indication whatsoever that the one-year term of supervised release had anything at all to do with the determination of the amount of loss. So why wouldn't we just... Why would we remand for a redetermination of the amount of supervised release? And if we did remand, why wouldn't it only be limited to the amount of supervised release and not to the term of imprisonment? Well, I think that the... So I think there are two answers to the question. The first is that I don't think that it's necessarily the case that the probation was... Sure, the probation determination or the supervised release determination was limited to the question of deportation. Well, wait a minute. Let me read. Here's what the probation officer's recommendation. Following release from custody, a period of three years, supervised release is recommended. Although the defendant is eligible for deportation due to her involvement in the incident offense, final deportation decision will not be made until she appears in immigration court. Accordingly, if she's not deported or if deportation is delayed, a term of supervised release will ensure she is monitored while still in custody. And then at the sentencing, you asked Judge Kendall, you said, I'm talking about supervised release because we jumped into supervised release. And then Judge Kendall said, no. So it is the probation officer's position now that while she is potentially being deported, that they keep her on supervised release, correct? Probation officer, that would be correct, Your Honor. And then you lied your objection. You say, we object. And Judge Kendall says, to what? And you said, to both the restitution and the term of supervised release. How can we extrapolate from that that one-year term of supervised release had anything at all to do with the amount of lost determination? Well, I think one way that it is, first of all, again, I don't think that it's entirely clear. Although probation was a consideration and that she would be held in supervised release before being deported, her original sentence was for three years of supervised release. This one was for one. And so I think that the only thing that we can really extract from that would be that the lower loss amount corresponded to a lower supervised release in this case. The court doesn't explicitly make that finding, but the only alternative is the court just didn't really make a mistake. And I think if you look at the record, I think it's in that citation slightly before it. The court asks what they gave when the court's determining how long of a supervised release to give. The court asks how long did we give before and mistakenly believes that it was for one year, when in fact it was for three. To answer Your Honor's question, I think the pressing and more difficult question is the one that you raise, where is supervised release the only thing that's essentially at issue on remand if she's already served her sentence and the sentence is however erroneous, it would only have the possibility of, you can't take that time back essentially. I think the question just goes to that's, she still has to, the restitution is part of the sentence and what we're talking about is structural error. I think it's important for the court to correct that structural error even if it doesn't result. Structural error? Structural error in the sense that there is a miscalculation of the guidelines. That's an error, but it doesn't meet the Supreme Court's standards for structural error. I apologize, I'm mistaken Your Honor. What I mean in a sense is that there's an error in the calculation of the guidelines. And to the extent that that error in calculation may not change or give back any of the time from her sentence, that can have, whether or not she over served is something that is still an open question. Can you address plain error on the restitution issue? Why would we send this back finding that affected her substantial rights if the amount, the permissible amount of restitution is far in excess of $80,000? I think it incorrectly presumes that the permissible amount or the correct amount is far in excess of $80,000. Are you suggesting that the loss to the government here was less than $80,000 in a what, nearly $7 million fraud case? Just the loss to the government on the that the defendant herself fiddled with the records. I think that in that case the government would still have to prove with some degree of specificity and reliability what the loss amount was and whether or not it was foreseeable to Ms. Newton. No, I phrased it as the records that she herself manipulated. The consequences of her own actions have to be foreseeable to her unless her claim is that she's insane, which I don't think she's claiming. She's not. Our position is that the records that she actually manipulated as part of filling out the visit notes for Ferdy in the first phase of the scheme were far below what the government has represented here and it's still their burden to make that finding and make that showing. I don't think that it's entirely clear to me that it would be in excess of $80,000. And the government hasn't proved that. We haven't, just it hasn't been proved. So I think that if, I don't know if that addresses the the plain error argument, but our understanding is that it is an error and it's one that the defendant feels very strongly about and that she feels that she will prevail on remand, particularly if it's in front of a, if it's given in a situation in which the government is called to actually plead to meet its burden of proof with the specificity that restitution requires. Unless the court has any other questions, we'll reserve our time. Mr. Wynn. Good afternoon, your honors, and may it please the court. Connor Wynn for the United States. I'd like to make three brief points here today. First, as the parties agree, vicator of Ms. Newton's sentence and restitution judgment is appropriate here, and a remand for resentencing should follow. Second, the government believes that this case should take, that the resentencing should take place. I think it's likely that the district judge, even if we issue an order quickly, is the district judge going to resentence her within two months? Your honor, I can't say. I think that at the very least this court's mandate wouldn't issue for at least... Oh no, we can order the mandate issued instantly. Yes, that's correct. I can't say whether or not the district judge would act that quickly. If the district judge chose to do so, the government would of course... Ms. Newton has asked us to direct the case to go to a new judge, which if we did, would absolutely ensure that there could not be a resentencing within the next two months. I agree with that entirely. I have some difficulty understanding why we're asked for that. I agree with you entirely, your honor, and that's why in our answering brief, we suggested that remand to the same district judge would be the most likely way to ensure that Ms. Newton receives an expeditious resentencing. I don't think there's a technical mootness trouble because the district judge could reduce the custodial sentence by two months, and then the supervised release would end automatically. I agree with that as well, your honor. The statutory supervising... The statute for supervisory release in this instance doesn't set a minimum on the amount of supervised release that Ms. Newton must receive. Although the guidelines recommend at least a year, I think the district court could disregard that because the guidelines are advisory. And I think that there would in fact, to Judge Kirsch's point, the district court may have very good grounds to do so in this case. If Ms. Newton has in fact served more time in prison than she should have, that might be a good reason to downwardly vary from a supervisory release range prescribed by the  It's odd here because I read the sentencing transcript. When I first read it, I thought maybe the district judge had settled on a loss amount of $2 million, which would be reasonable and which would support the 16-level enhancement. But it's hard to track that through the entire sentencing hearing to come out and say the loss amount is actually $2 million. Judge Kirsch, I agree with you. I think initially that was the figure that the district court arrived at. It then reduced the loss figure to $1.18 million to account for sentencing disparities between Ms. Newton and Mr. Reginald Donate. Which is not really what you're supposed to do. You're supposed to determine the guideline range and then you can reduce under 3053 to treat the disparity in sentencing. But the loss amount should be determined, period. The government agrees with you entirely. We think that that actually is likely a legal error in the district court's guidelines analysis. Of course, we have not cross-appealed, so that error is not before this court. But I do think it is our opinion that that is an improper reason to reduce a loss figure. Does the government on remand, will the government argue that the restitution amount that Ms. Newton might owe is less than $80,000? No, absolutely not, Your Honor. So how does the $80,000 amount affect her substantial rights? There's no doubt there was error here. But how does it affect her substantial rights if the loss amount to the government is clearly more than $80,000 in this case? The government's not of the opinion that it does affect her substantial rights, nor does it affect a miscarriage of justice, because we agree that the loss amount is more than $80,000. So then we should affirm on the restitution issue? The government has recommended vacating the restitution order here, consistent with our obligations under the Crime Victims' Rights Act, which requires the government to seek full and complete restitution, because we believe that amount is greater than $80,000. Oh, so you'll seek more. I understand. Right, because we believe it's more than that. We believe we have an obligation to pursue that restitution on behalf of Medicare. You have an obligation to pursue it unless, very quickly, Ms. Newton changes her mind and dismisses her repeal. Certainly, and we can do nothing about that, Your Honor. If the court has no further questions, the government would rest on its briefs. Thank you, Mr. Wynn. Mr. Fink, anything further? Unless the court has any further questions, we rest on our briefing. All right. Well, thank you, Mr. Fink, and we appreciate your willingness and that of your law firm to accept the appointment of this case, and the assistance you've been to the court, as well as your clients. Thank you, Your Honor. The case is taken under advisement, and the court will be in recess.